IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE


| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | No. 3:07-CR-113 |
| | ) | |
| DANIEL GLEN HAMPTON | ) | |

### MEMORANDUM AND ORDER

This criminal case is before the court on the defendant's objections to the magistrate judge's report and recommendation [doc. 127]. The government has not responded to the objections within the time allowed, and the objections are ripe for the court's review. A transcript of the suppression hearing has been prepared and considered by the court [doc. 120]. For the reasons discussed below, the defendant's objections will be overruled.

The defendant is charged in a three-count superseding indictment with conspiracy to distribute and possess with the intent to distribute various controlled substances, possession of firearms in furtherance of drug trafficking, and possession of firearms by a felon, as well as forfeiture of real and personal property. The defendant filed a motion to suppress any statements he made on the day of his arrest [docs. 67 and 112], and a motion to suppress all the

evidence obtained by way of a wire tap [doc. 61]. The magistrate judge recommended that both motions be denied.

Under 28 U.S.C. § 636(b), a *de novo* review by the district court of a magistrate judge's report and recommendation is both statutorily and constitutionally required. *See United States v. Shami*, 754 F.2d 670, 672 (6th Cir. 1985). However, it is necessary only to review "those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b); *see also United States v. Campbell*, 261 F.3d 628, 631-32 (6th Cir. 2001).

**A. Motion to Suppress Statements**

1. Factual Background

On August 18, 2007, in response to a 911 call reporting a shooting, officers arrived at the defendant's property in Rhea County, Tennessee. The defendant's wife had been shot and killed. When Detective Chris Hall arrived, there were other officers present securing the scene. Detective Hall called Agent Luke Muhonen of the Tennessee Bureau of Investigation and asked him to come to the scene. The defendant was sitting by himself in the back of a police cruiser with the doors open. Detective Hall did not speak to the defendant until Agent Muhonen arrived over an hour later.

Hall and Muhonen discussed whether they should get a search warrant or consent before processing the crime scene. Agent Muhonen called

2

the District Attorney who advised that they should attempt to get the defendant's consent. Detective Hall went the cruiser where the defendant was sitting in the back seat and read the *Miranda* warnings to the defendant. Detective Hall asked several times for consent to search the house, but the defendant did not answer. Finally, the defendant said he was getting sick and asked to get out of the cruiser. While standing outside, the defendant asked, "When are you going to get her out of there?" Detective Hall told him that they could not move her until they got a search warrant or he consented to a search. Defendant then agreed to the search and signed the consent form. Detective Hall asked the defendant if they were going to find any weapons inside the house, and the defendant told him that there was a shotgun in the house, an AK47 in the trunk of the car, and some other weapons that did not belong to him. During this time, the defendant also told Detective Hall that he and his wife had been using drugs that morning or the night before.

Agent Muhonen was given the responsibility of interviewing the defendant. The defendant was upset and wanted to leave the scene, however, so he was taken to the Sheriff's Department Annex for his interview. Agent Muhonen read the defendant his *Miranda* rights again, and he signed the waiver. Agent Muhonen wrote down the defendant's statement, which the defendant signed. The interview lasted about two hours.

Before the defendant was removed from the scene for his interview, Agent Muhonen heard him ask for a pill, an "'oxy' or a 'hydro' or something," but Agent Muhonen did not know about the defendant using drugs that morning before the shooting until he took his statement and the defendant admitted the use. The defendant was very tired during the interview and dozed off several times, and at times he was very upset and crying.

The defendant did not testify at the suppression hearing but submitted an affidavit. The affidavit states, in relevant part:

> 1. On the morning of August 18, 2008, law enforcement agents began arriving after I had called E-911. Shortly after the first EMT's and officers arrived, I was asked if I would answer some questions. I overheard another officer ("THP") state he was investigating a murder scene. I stated that I wanted an attorney but was asked "Why do you need an attorney? Did you do something wrong? and You want to help your wife don't you? among other things.
> 2. I was then told I was not under arrest. I was not handcuffed. I was not read any of my rights. The officers continued to question me and I answered some questions. I did not state at any time that there was an AK-47 in the trunk of my vehicle or a shotgun in my house.
> 3. I was later taken to the Rhea County Sheriff's office. The officers continued to question me, but I was not told that I was under arrest. Eventually, I was placed under arrest after questioning at the Rhea County Sheriff's department.

## 2. Legal Discussion

In his objections to the report and recommendation, the defendant contends that the magistrate judge erred in finding that there was no basis for suppressing the defendant's statements. Although it is not exactly clear which statements the defendant seeks to suppress or the basis for suppressing the statements, the court will consider the possibilities raised in the defendant's brief.

*(a) Necessity of <u>Miranda</u> warnings*

In his report and recommendation, the magistrate judge found that the defendant was not in custody when Detective Hall approached the defendant to obtain his consent to search the house, and *Miranda* warnings were not required. The defendant argues that the facts do not support this finding. He contends that there were several officers in the vicinity; that the officers were investigating a "possible homicide"; that Agent Muhonen intended to interview the defendant; and that the officers eventually became aware of a pending federal investigation. All these facts, the defendant argues, lead to the conclusion that the defendant was not free to ignore the police or leave, so he was in custody.

In this case, it does not matter whether the defendant was "deprived of his freedom of action in any significant way" when he was sitting in the back seat of the cruiser, *Miranda v. Arizona*, 384 U.S. 436, 444 (1966), because Detective Hall testified that he gave the defendant his *Miranda* warnings before asking the defendant for his consent and before asking him about weapons that

5

might be found during the search. The magistrate judge found Detective Hall's testimony credible, and this court agrees. In his objections, the defendant does not appear to dispute this finding except to state, "While the Rhea County Sheriff's Department has a written Miranda rights waiver, none was signed in this case." This court has reviewed the transcript and, notwithstanding the defendant's affidavit to the contrary, adopts the finding of the magistrate judge that Detective Hall read the defendant his rights before asking him about the weapons.

As for the statement the defendant gave at the Sheriff's Department annex, it does not appear that the defendant is suggesting that he was not given his *Miranda* warnings, as there is a signed waiver of rights form.

*(b) Voluntariness of statements*

Next, the defendant argues that his state of mind at the time he made the statements was so compromised that any abandonment of rights was not voluntary. The defendant points to the following facts to support his argument: he had taken drugs that morning before the shooting, he asked for pills while at the scene, he was sick, and he was dozing off during his statement at the annex. The defendant did not raise these specific issues in his pleadings or at the suppression hearing, so the magistrate judge did not consider the particulars of this argument beyond finding that the defendant's statements were "knowing, intelligent, and voluntary."

6

The question is whether the defendant was so sick, under the influence of drugs, or sleepy that his statements were not voluntary. Based on the record before the court, the court finds that the defendant's state of mind was not so affected that his statements and consent were not voluntary. The defendant's state of mind cannot be attributed solely to his alleged drug use that morning. He, by his own admission, was involved in the shooting death of his wife. This likely contributed to his condition, but the defendant was rational enough to understand that he would have to consent or wait for a search warrant before his wife's body could be removed. Further, he quickly answered the question about firearms, and his statement at the annex was coherent as evidenced by the corrections he made to the statement after it was written out for him. The court finds that the defendant's statements were voluntary and the product of a rational mind.

For these reasons, this court agrees that there is no basis for suppressing the defendant's statements, and his objections on this issue will be overruled.

### B. Motion to Suppress Fruits of the Wiretaps

The defendant also objects to the magistrate judge's determination that the government's affidavits in support of its two requests for wiretaps met the necessity requirement of 18 U.S.C. § 2518(1)(c). The defendant asserts that the magistrate judge did not adequately consider the goals of wiretap applications in

determining that the wiretaps were necessary.  The defendant recognizes that the wiretap applications in this case state that the goal was to identify the sources of supply for and the members of the drug conspiracy allegedly being operated out of residences owned by the defendant.  But, the defendant contends that other investigative techniques were providing the information needed, and the wiretaps were not necessary.

Section 2518(1) of Title 18, United States Code, provides that applications for wiretaps must include, among other things, "(c) a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous."  The Sixth Circuit does not require that

> police officials exhaust every conceivable non-wiretap investigative technique.  All that is required is that the investigators give serious consideration to the non-wiretap techniques prior to applying for wiretap authority and that the court be informed of the reasons for the investigators' belief that such non-wiretap techniques have been or will likely be inadequate.

*United States v. Lambert*, 771 F.2d 83, 91 (6th Cir. 1985).  While it is true that the drug conspiracy had been under investigation for some time, and various other investigative techniques had been utilized including informants who made buys from the defendant and others and who gave statements (the defendant's wife being one of these persons),  it is clear from the details provided in the affidavits that these techniques were limited.  Other than one possible source for the

8

marijuana, the investigating officers did not know who was providing the drugs to the defendant, or who many of the co-conspirators were. Further, surveillance was not possible given the remote locations of the defendant's residences, and he used sophisticated means to detect "wires" and weapons on the people who came to buy drugs. He also was known to threaten the lives of persons he believed were "snitching," and he had numerous firearms, sometimes trading drugs for them.

The defendant also suggests that <u>one</u> fact was omitted from the affidavits which, if it had been made known to the issuing judge, would have shown that the wiretaps were not necessary. The fact concerns information received from the defendant's wife that Larry Eugene Hampton was one source of the marijuana the defendant allegedly sold. The defendant argues that this shows that the investigators knew at least one source through ordinary investigative techniques, and there was no reason why they could not use the same techniques to identify other sources.

The defendant is alleged to deal in marijuana, cocaine, and prescription narcotics, and the investigators did not know the source of the other controlled substances. The court finds that even if this one fact had been included in the affidavits, the issuing judge would certainly have decided that the wiretaps were necessary to identify other sources and co-conspirators.

The court agrees with the magistrate judge that the affidavits in support of the issuance of the wiretaps adequately demonstrated the necessity for the wiretaps, and the defendant's motion to suppress the fruits of the wiretaps should be denied.

### C. Conclusion

The court has reviewed the pleadings, the report and recommendation, the exhibits and the transcript of the suppression hearing. For the reasons discussed above, the court **ADOPTS** the magistrate judge's report and recommendation. It is hereby **ORDERED** that the defendant's objections are **OVERRULED**, and the defendant's motions to suppress evidence [docs. 61, 67, 91 and 112] are **DENIED**.

ENTER:

　　　　*s/ Leon Jordan*
United States District Judge