IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE


| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 3:07-CR-113 |
| | ) | |
| DANIEL GLEN HAMPTON | ) | |

## MEMORANDUM AND ORDER

This criminal case is before the court on the defendant's *pro se* motion to withdraw his guilty plea [doc. 188]. The defendant's original counsel, Jonathan Moffatt, was allowed to withdraw after the defendant filed his motion, and new counsel was appointed to represent the defendant [doc. 190]. New counsel filed an amended motion to withdraw the defendant's guilty plea [docs. 198 and 199], and the government filed a responsive brief [doc. 202]. The government also filed a memorandum of law regarding the defendant's potential waiver of the attorney-client privilege given the defendant's argument that Mr. Moffatt provided ineffective assistance of counsel [doc. 203].

### Procedural and Factual Background

In a superseding indictment filed on January 15, 2008, the defendant and two others were charged with conspiracy to distribute and to possess with

the intent to distribute five kilograms or more of cocaine hydrochloride, fifty grams or more of cocaine base, 100 kilograms or more of marijuana, and Oxycontin.[1] The defendant was also charged with possessing multiple firearms in furtherance of a drug trafficking offense, and with being a felon in possession of the firearms. Prior to trial, on behalf of the defendant, Mr. Moffatt filed motions to suppress wiretap evidence and evidence seized during the search of the defendant's home and vehicles [docs. 61, 67 and 91]. Following a hearing on the motions, the magistrate judge recommended that the motions be denied [doc. 121]. This court considered the defendant's objections to the magistrate judge's recommendation but denied the defendant's motions to suppress evidence [doc. 128]. The trial was reset several times, but was finally set on May 11, 2009. At the end of April 2009, the court was informed that the defendant had entered into a plea agreement with the government, and on April 28, 2009, the defendant pled guilty to the conspiracy charge and the possession of firearms in furtherance of the drug trafficking offense.

      The plea agreement filed in this case [doc. 154] clearly states that the defendant is facing a mandatory minimum sentence of twenty years on the conspiracy count because he has a prior drug felony conviction and that he is facing a five-year mandatory minimum on the firearms count. The government

---

[1] The original indictment in this case charged six defendants, but three defendants pled guilty and were sentenced prior to the filing of the superseding indictment. The other two defendants named in the superseding indictment, Brent Tartar and Emory Saylor, have also pled guilty and are awaiting sentencing.

2

agreed to allow the defendant to appeal the court's denial of his motions to suppress evidence. The plea agreement also allowed the defendant to argue at sentencing and on appeal the applicability of mandatory consecutive sentencing. The parties specifically agreed that the appropriate base offense level for the controlled substances the defendant distributed and possessed would be a 32 and that he would receive a three-level enhancement for being a manager or supervisor of the criminal activity. The defendant would also be eligible for a three-level reduction for acceptance of responsibility.[2]

In his *pro se* motion to withdraw his plea, the defendant contends that he did not understand the factual basis of the guilty plea; that if he had known the names of the other persons involved he would not have pled guilty; that he was under great duress at the time of his guilty plea due to a "reverse reaction to his mental health medications"; that he believed he would be sent straight to Rhea County to appear in court on his first degree murder charges there; that his lawyer failed or was unable to make him fully aware of what was going on; that he wanted to withdraw his guilty plea one day after it was entered; and that he "will prove that the government don't let you go to court and tell the truth, no they give you a script and offer time cuts for people who will take the stand and perjure themselves. We don't like being tricked!"

---

[2] The court notes that under the terms of the plea agreement, the government will not make or will withdraw the motion for the third acceptance-of-responsibility point (USSG § 3E1.1(b)) if the defendant engages "in any conduct or make[s] statements that are inconsistent with accepting responsibility."

The defendant's amended motion alleges that he received ineffective assistance of counsel because he was not competently advised of the terms and conditions of the plea agreement. The defendant claims that he did not understand the "legalese" used by Mr. Moffatt, and he specifically did not understand that he would receive two mandatory minimum sentences totaling twenty-five years if he pled guilty. The defendant also claims that he believed that he would be able to prove that the drug quantities were less than what was charged in the indictment. He also claims that Mr. Moffatt was fully aware of his mental problems and that he was taking potent anti-psychotic medications. Yet, a psychiatric evaluation was not done on the defendant. For all these reasons, the defendant argues that he should be allowed to withdraw his plea.

An evidentiary hearing was held on the defendant's motions on February 16, 2010. The defendant testified, as did Mr. Moffatt and Tyler Crabtree, a former jailer for the Knox County Sheriff's Department.

Under oath, the defendant testified that he understood that he was waiving any attorney-client privilege related to the allegations of ineffective assistance of counsel. He stated that he had taken all of his medications before coming to court and that he felt "great."

As to the events surrounding the entry of the defendant's guilty plea, he said that only "vaguely remembers" the plea hearing. He claimed that at the time he was taking Effexor, an anti-depressant medication and that he had a bad

4

reaction to it. He said he was "zoned out" at the time of his plea because he had taken his medications that morning and they "messed up" his mind. Once he was transported to jail in Ocilla, Georgia, his medications were changed and he felt better. Further, he claimed that he had kidney stones and surgery right before his plea, although the exact time frame for this surgery was never established. He honestly believed that the court and the government were going to make him plead guilty.

He stated that the plea negotiations came "out of nowhere." The defendant admitted that he and Mr. Moffatt discussed the plea agreement and he thought he understood the provisions of the plea agreement. He knew he was going to be debriefed by the government. He also admitted that he "had some part of it," meaning that he was involved in the conspiracy, but he wanted to argue the drug amounts to a jury.

When he arrived at Ocilla, he talked to other prisoners who told him that as a result of his plea agreement he would serve twenty-five years in prison. He stated that he would not have signed the plea agreement if he had known about the twenty-year mandatory minimum sentence for the conspiracy count.

The defendant claims that he talked to Mr. Moffatt "over and over" about filing something so he could withdraw his plea but Mr. Moffatt did not think it was a good idea. He says that he did not have any resources (a law library) to file his own motion. The defendant said that he wanted to get sent back to Knox

5

County, so he lied and said that he had some information about the Outlaws motorcycle gang that he was willing to give the government. He had no intention of telling the government anything – he just wanted to get back so he could file a motion to withdraw his plea.

On cross examination, the defendant claimed that his plea was a mistake; that he was just being agreeable. He admitted, however, that the transcript of the plea hearing [doc. 193] demonstrates that he appropriately answered the following questions:

p. 6	COURT: Do you understand what's happening here today?
	DEFENDANT: Yes, I believe I do.

pp. 7-8	COURT: I understand that you have entered into a plea agreement with the government. Has Mr. Moffatt explained the terms of the plea agreement to you?
	DEFENDANT: Yes, I believe he has – pretty good.
	COURT: Good. Are you satisfied with your lawyer's advice and his representation of you in this case?
	DEFENDANT: Pretty much so, yeah.

The court then advised the defendant of his constitutional rights and that he was giving up those rights by entering a plea of guilty that is accepted by the court.

p. 10	COURT: And, Mr. Hampton, has any person including an officer or agent of the government, put any pressure on you, either mental or physical, to force you to plead guilty?
	DEFENDANT: No. I don't – I mean I've had a lot of time to sit and think about things, you know.

When the court asked the defendant if he wanted to have the indictment read to him, he stated: "I've read it a bunch. I don't need to have it read again. I appreciate you asking me."

After the government stated the elements of the offenses and the factual basis, the court asked the defendant if he agreed with the government's summary of what he did. The defendant said, "Yes," and then pled guilty.

p. 14  COURT: And, do you understand what you're pleading guilty to?
DEFENDANT: Yes. What just got read, right?

The government then informed the defendant of the penalties including the fact that the defendant faced "a minimum mandatory term of not less than 20 years" on Count One, and "a mandatory minimum five years" on Count Two. Based on the defendant's demeanor in court and his answers to the questions, the court found the defendant competent to enter a plea and that he understood what he was pleading guilty to and what the penalties were.

Attorney Jonathan Moffatt testified for the government. He has been with Federal Defender Services for eight years and has handled hundreds of cases, 85% of which ended in guilty pleas. Mr. Moffatt stated that he was appointed to represent the defendant in 2007. He reviewed the indictments and went over them with the defendant. In his opinion, the defendant understood the charges against him. When Mr. Moffatt first met the defendant right after his arrest, the defendant was still under the influence of the illegal drugs he had been

using. Mr. Moffatt had a psychiatrist see him, and the defendant was prescribed Seroquel, an anti-depressant.[3] The defendant's mental state improved, in part because of the new medication and in part because he was no longer using illegal substances.

Mr. Moffatt testified that the plan always was to go to trial because the defendant was concerned about the quantities of drugs. In fact, Mr. Moffatt filed the motions to suppress and handled the suppression hearing in anticipation of a trial. Mr. Moffatt and the defendant did not talk about a plea until the defendant mentioned it shortly before the trial date. After the defendant expressed an interest in a plea deal, Mr. Moffatt negotiated a conditional plea agreement with the government that capped the amount of drugs for which the defendant would be held responsible. Mr. Moffatt said that he reviewed the plea agreement with the defendant several times and believed that the defendant understood what he was pleading guilty to and what a guilty plea would mean. He specifically recalls going over the sentencing options with the defendant and that the plea agreement called for specific statutory sentencing guidelines. He explained what mandatory minimum sentences are and what they were in the defendant's case.

---

[3] Mr. Moffatt testified that he considered asking for a Bureau of Prisons evaluation of the defendant, but the defendant would have had to waive confidentiality rights and, with the first degree murder charges pending in Rhea County, he decided against it. In any event, the defendant's mental status improved.

On the day of the plea, Mr. Moffatt stated that he noticed nothing unusual about the defendant's demeanor or behavior and believed that the defendant was competent to plead guilty. He does not recall that the defendant was confused during the plea hearing, although the defendant asked him to explain a few of the court's questions. Mr. Moffatt could not recall that the defendant expressed any confusion about the mandatory minimum sentences. The U.S. Marshal's Service moved the defendant to Ocilla, Georgia, shortly after the plea. He talked to the defendant by phone a few days later, and the defendant seemed pleased to get the matter behind him, but had some concerns about his family. The defendant asked for his file to be sent to him. During one phone call, the defendant and Mr. Moffatt discussed the guilty plea and the defendant expressed some reservations. Mr. Moffatt explained it to the defendant again and the defendant seemed satisfied. The defendant did not suggest that he wanted to withdraw his guilty plea, nor did he ever ask Mr. Moffatt to file such a motion.

The final witness was Tyler Crabtree who was employed at the Knox County jail as a certified medical officer at the time the defendant was housed there. Mr. Crabtree produced the Medical Administration Record ("MAR") for April 2008, which showed the medications given to the defendant on the days prior to and the day of the defendant's guilty plea. The defendant was prescribed "HCTZ," which Mr. Crabtree described as a water pill, Urocit for kidney stones,

9

and Seroquel, an anti-depressant. The defendant was not prescribed, nor was he given, Effexor.  The defendant received his dosage of Seroquel the night before the plea.  On the morning of the plea, the defendant received HCTZ and Urocit as prescribed.

## **Legal Discussion**

Pursuant to Rule 11(d)(2)(B) of the Federal Rules of Criminal Procedure, the defendant has the burden of showing a "fair and just reason for requesting the withdrawal" of his plea.  "The purpose of Rule 11(d) is to allow a 'hastily entered plea made with unsure heart and confused mind to be undone, not to allow a defendant to make a tactical decision to enter a plea, wait several weeks, and then obtain a withdrawal if he believes that he made a bad choice in pleading guilty.'" *United States v. Dixon*, 479 F.3d 431, 436 (6th Cir. 2007) (quoting *United States v. Alexander*, 948 F.2d 1002, 1004 (6th Cir. 1991)).  The Sixth Circuit has identified several nonexclusive factors for the court to consider under Rule 11(d):

> (1) the amount of time that elapsed between the plea and the motion to withdraw it; (2) the presence (or absence) of a valid reason for the failure to move for withdrawal earlier in the proceedings; (3) whether the defendant has asserted or maintained his innocence; (4) the circumstances underlying the entry of the guilty plea; (5) the defendant's nature and background; (6) the degree to which the defendant has had prior experience with the criminal justice system; and (7) potential

> prejudice to the government if the motion to withdraw is granted.

*United States v. Bashara*, 27 F.3d 1174, 1181 (6th Cir. 1994). A review of these factors in this case shows that the defendant's motion to withdraw his plea is not well taken.

First, over six and half months (203 days) elapsed from the time the defendant entered his plea until he filed his *pro se* motion to withdraw his plea, one day before his sentencing hearing. The Sixth Circuit has affirmed courts' decisions to deny withdrawal motions for shorter delays than the 203 days in this case. *See, e.g.*, *United States v. Durham*, 178 F.3d 796, 799 (6th Cir. 1999) (77 day delay); *United States v. Baez*, 87 F.3d 805, 808 (6th Cir. 1996) (67 days); *United States v. Goldberg*, 862 F.2d 101, 104 (6th Cir. 1988) (55 days); *United States v. Spencer*, 836 F.2d 236, 239 (6th Cir. 1987) (35 days).

Second, the defendant's reason for not filing it sooner was that his lawyer refused to do it and he did not have a law library so he could file his own motion. Mr. Moffatt testified that the defendant never requested that such a motion be filed. The court finds Mr. Moffatt's testimony credible and that the defendant never asked Mr. Moffatt to file such a motion. Furthermore, the defendant's claim that he needed a law library in order to file his own motion is not supported by the record. The defendant has filed numerous *pro se* pleadings in this case, none of which cite to any law or authority including the *pro se* motion

he filed to withdraw his plea. And, the defendant certainly knows that his *pro se* pleadings were not "thrown away" as he claimed during his testimony as a reason for not filing a motion sooner.

Third, the defendant has not denied that he was involved in the drug trafficking conspiracy. Rather, he testified that he was innocent of the charges in the indictment, but that he had "some part of it."

Fourth, the defendant claims that he was not competent because of a bad reaction to his prescription medication, Effexor, that he had taken the morning of the plea. The problem with this argument is that he was never given Effexor, the morning of the plea.[4] The only anti-psychotic medication he was given was administered the night before the plea. The defendant claims he is still taking the Seroquel and he feels "great." At the plea hearing, the defendant answered all the court's questions appropriately, and there was no indication that he did not understand what he was doing. Mr. Moffatt testified that he did not notice anything unusual about the defendant's demeanor at the time of the plea.

The defendant also claims that Mr. Moffatt did not make it clear that he was pleading to charges that would result in twenty-five years in prison. To the contrary, Mr. Moffatt described the numerous times he reviewed the plea agreement with the defendant explaining the terms of the plea agreement and the

---

[4] At the time of the plea when the court asked the defendant about any medications he had taken, he told the court that he had taken Seroquel, a potassium pill and a blood pressure pill. There was no mention of Effexor.

penalties.  The government also advised the defendant of the penalties at the time of the plea.  The court notes that the plea agreement specifically limited the defendant's exposure based on the amounts of the controlled substances charged, and this was fully explained to the defendant.

Fifth, the defendant has a high school education.  His drug use goes back to his childhood.  The court recognizes that he has been treated for mental health issues since he was a teenager.  There is no particular diagnosis except depression and antisocial personality disorder.  Sixth, the defendant's prior experience with the criminal justice system goes back fourteen years and includes some drug and firearm charges.  He has had numerous arrests for charges which were later dismissed.

Finally, the prejudice to the government is a crucial factor in this case.  The Assistant United States Attorney who worked on this case from the very beginning has left the United States Attorney's office.  Further, three of the cooperating witnesses have been sentenced in reliance on the fact that the defendant also pled guilty.

## **Conclusion**

None of the factors weigh in favor of allowing the defendant to withdraw his guilty plea.  The court finds that the defendant has failed to show any fair or just reason for withdrawing his plea.  Much of his testimony was not

13

credible and was directly contradicted by the testimony of his attorney and jail medication records. The court finds that the defendant understood what he was pleading guilty to and the penalties he was facing. As the court found at the time of the plea, the defendant's plea was knowing and voluntary.

It is hereby **ORDERED** that the defendant's motions to withdraw his guilty plea are **DENIED**. It is further **ORDERED** that a sentencing hearing is set for Wednesday, **March 24, 2010, at 10:30 a.m.**

ENTER:

*s/ Leon Jordan*
United States District Judge